REVISED July 15, 2011

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 10-50577

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 23, 2011

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

LUIS ANGEL SARILES,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before KING, WIENER, and CLEMENT, Circuit Judges.

KING, Circuit Judge:

Luis Angel Sariles appeals following his conviction after a bench trial of importing and possessing with intent to distribute fifty kilograms or more of marijuana. Sariles sought to assert a public authority defense at trial on the basis that he had been acting on the apparent authority of a local law enforcement officer to permit his conduct. We hold, consistent with sister circuit precedent, that the public authority defense requires a law enforcement officer who engages a defendant in covert activity to possess actual, rather than only apparent, authority to authorize the defendant's conduct. We therefore AFFIRM the district court's judgment.

## I. BACKGROUND

On November 13, 2009, Sariles was stopped at the Paso Del Norte Port of Entry in El Paso, Texas, driving a van loaded with 97.3 kilograms of marijuana. The Government charged him in a two-count indictment with importation of fifty kilograms or more of marijuana, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 960(b)(3), and with possession with intent to distribute fifty kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

At the time of his arrest, Sariles contended that he had been acting in cooperation with Deputy Kevin Roberts of the Reeves County Sheriff's Department. Prior to the arrest at the border, Deputy Roberts had stopped Sariles on two separate occasions and discovered evidence of narcotics trafficking. Sariles and Roberts entered into an oral agreement for Sariles to avoid charges in Reeves County by providing Roberts with information about load vehicles of marijuana crossing the border from Mexico. According to Deputy Roberts, Sariles was told that he was not to transport any further loads of marijuana into the United States and that if he did so he would be "on his own." Sariles contended, however, that he could not obtain information about the smuggling operation without running a load of marijuana and that he believed Deputy Roberts wanted him to deliver the load as part of their agreement.

Based on this belief, Sariles filed the requisite notice of a public authority defense pursuant to Federal Rule of Criminal Procedure 12.3. The Government moved to exclude the defense on the grounds that Sariles was not acting at the behest of Deputy Roberts and that, even if he were, the defense was inapplicable because Roberts, as a state official, lacked the actual authority to authorize Sariles to violate federal drug laws.

The district court conducted a hearing and agreed with the Government that Sariles could not present evidence of a public authority defense. The district court reasoned that apparent authority is insufficient and a defendant

cannot rely on the defense unless the law enforcement officer has the actual authority to sanction the otherwise illegal conduct. Although Sariles's subjective belief about his agreement with Deputy Roberts was disputed, it was undisputed that Roberts lacked actual authority to permit importation and possession with intent to distribute marijuana in the United States. Accordingly, the district court concluded that the defense was not viable. It further concluded that evidence of Sariles's belief or understanding that he was acting under public authority was inadmissible as irrelevant under Federal Rule of Evidence 402.

Sariles subsequently agreed to a bench trial based on stipulated facts. He agreed in the stipulation that he imported and possessed marijuana, knew the substance involved was marijuana, and possessed the marijuana with the intent of distributing it. He also stipulated to the place of entry into the United States and the quantity of the drugs. The district court found Sariles guilty of both counts of the indictment and sentenced him to concurrent terms of 51 months in prison and three years of supervised release.

## II. DISCUSSION

On appeal, Sariles argues that the district court erred in ruling that the public authority defense was unavailable. Relying primarily on the language of Federal Rule of Criminal Procedure 12.3, he contends that a defendant need rely only on the apparent authority of a law enforcement officer in order to invoke public authority as a defense. Whether a defendant should have been allowed to present an affirmative defense is a legal issue that we review de novo. See United States v. Long, 562 F.3d 325, 328 (5th Cir. 2009) (reviewing de novo a district court's refusal to provide a jury instruction on insanity).

Rule 12.3 provides in relevant part that "[i]f a defendant intends to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense, the defendant must so notify an attorney for the government in writing

. . . ." FED. R. CRIM. P. 12.3(a)(1). We have recognized that this defense "is available when the defendant is engaged by a government official to participate or assist in covert activity." United States v. Spires, 79 F.3d 464, 466 n.2 (5th Cir. 1996); see also United States v. Achter, 52 F.3d 753, 755 (8th Cir. 1995) ("'Public authority' has been described as an affirmative defense where the defendant seeks exoneration based on the fact that he reasonably relied on the authority of a government official to engage him in covert activity."). But we have not previously addressed whether the defense requires the government official to have actual, as opposed to apparent, authority to authorize the defendant's acts.

Many of our sister circuits have considered this question, however. The Third Circuit has summarized well the history of the public authority defense, which has its roots in the common law. See United States v. Pitt, 193 F.3d 751, 756 (3d Cir. 1999). At common law, the illegal actions of a public official or law enforcement officer acting within the scope of his duties were not crimes. Id.; see also United States v. Fulcher, 250 F.3d 244, 254 n.4 (4th Cir. 2001). Thus, in order for the defendant to invoke the defense the official or officer had to have the actual authority to engage in the conduct at issue. Pitt, 193 F.3d at 756. Consistent with this rule, a defendant who claims he was acting on behalf of a law enforcement officer may escape culpability only because that officer had the ability to permit the conduct. A defendant may claim that he made a good faith mistake about the scope of the officer's authority because it appeared to him that the officer was sufficiently able to permit his conduct. Our sister circuits hold that reliance on apparent authority alone is a mistake of law, which generally cannot excuse a criminal act. See Fulcher, 250 F.3d at 253 (holding that acting on an officer's apparent authority is a mistake of law because it is a mistake about "'the legal prerogatives attached'" to the officer's status and is not a defense); United States v. Baptista-Rodriguez, 17 F.3d 1354, 1368 n.18 (11th Cir.

4

1994) ("[R]eliance on the apparent authority of a government official is not a defense in this circuit, because it is deemed a mistake of law, which generally does not excuse criminal conduct."); United States v. Duggan, 743 F.2d 59, 83 (2d Cir. 1984) ("The mistake that defendants advance here as an excuse for their criminal activities—their reliance on Hanratty's purported authority—is an error based upon a mistaken view of legal requirements and therefore constitutes a mistake of law."), superseded by statute on other grounds as recognized by United States v. Abu-Jihaad, 630 F.3d 102 (2d Cir. 2010). The majority of circuits to opine on the issue, therefore, hold that the defense of public authority requires the defendant reasonably to rely on the actual, as opposed to apparent, authority of a government official to engage him in covert activity. See Fulcher, 250 F.3d at 254; Pitt, 193 F.3d at 758; Baptista-Rodriguez, 17 F.3d at 1368 n.18.[1]

An opinion from one judge on a divided panel in the District of Columbia Circuit did recognize apparent authority as part of an exception to the mistake of law doctrine. See United States v. Barker, 546 F.2d 940, 949 (D.C. Cir. 1976) (opinion of Wilkey, J.). But in that case all three judges wrote separately, and, as noted by the Second Circuit, apparent authority "cannot be viewed as the rationale of the court" because only one judge endorsed that theory. Duggan,

---

[1] See also United States v. Matta-Ballesteros, 71 F.3d 754, 770 n.12 (9th Cir. 1995) (holding that public authority defense failed because "'a CIA agent could not lawfully authorize the violation of the federal drug laws'") (internal citation omitted), as amended, 98 F.3d 1100 (9th Cir. 1996); United States v. Holmquist, 36 F.3d 154, 161 nn. 6–7 (1st Cir. 1994) (comparing the "nonexistent defense of apparent authority" with "the potentially viable defense of actual public authority," which comes into play "when a defendant undertakes certain acts, reasonably relying on the statements of a government agent cloaked with actual authority"); United States v. Rosenthal, 793 F.2d 1214, 1235–36 (11th Cir.) (holding that district court did not err by limiting evidence of, and not instructing jury on, public authority defense based on alleged instructions from CIA officials, who lack power to authorize violations of federal law, because "a defendant may only be exonerated on the basis of his reliance on real and not merely apparent authority"), modified on other grounds, 801 F.2d 378 (11th Cir. 1986); Duggan, 743 F.2d at 84 (declining to adopt view "that a defendant may be exonerated on the basis of his reliance on an authority that is only apparent and not real").

743 F.2d at 84. Instead, we find persuasive the reasoning of the great majority of our sister circuits that require actual authority on the part of the law enforcement officer, and we choose to follow that path.[2]

Sariles argues that despite the traditional common law view, Rule 12.3 imports apparent authority into the public authority defense because it refers to a defendant's "believed exercise" of authority. Rule 12.3 was promulgated by Congress in 1988. See Anti-Drug Abuse Amendments Act of 1988, Pub. L. No. 100–690, § 6483, 102 Stat. 4181 (1988). It is generally recognized as a rule of procedure, rather than a substantive provision, that is intended to avoid unfair surprise by requiring notice of the defense to the Government. United States v. Burrows, 36 F.3d 875, 881 (9th Cir. 1994); see also Pitt, 193 F.3d at 756–57 (discussing history of the rule). Accordingly, we agree with our sister circuits that the enactment of Rule 12.3 "does not alter the common law requirement[]" that actual authority is a necessary element of the public authority defense. Pitt, 193 F.3d at 757; see also Fulcher, 250 F.3d at 254 n.5 ("Rule 12.3 is merely a notice provision and does not in any way alter the substantive legal standards with regard to the public authority defense[.]"); Burrows, 36 F.3d at 881 ("Rule 12.3 sets forth a notice requirement but does not limit or expand the public authority defense.").

In accord with the above precedent, we hold that the public authority defense requires the defendant reasonably to rely on the actual, not apparent, authority of the government official or law enforcement officer to engage the defendant in covert activity. Because it is undisputed here that Deputy Roberts

---

[2] This view is also consistent with our precedent concerning the similar defense of entrapment by estoppel, which "is applicable when a government official or agent actively assures a defendant that certain conduct is legal and the defendant reasonably relies on that advice and continues or initiates the conduct." Spires, 79 F.3d at 466. As a "narrow exception" to the mistake of law doctrine, entrapment by estoppel requires a defendant charged with a federal crime to show the actual authority of a government official to render the advice about federal law. Id. at 466–67.

lacked actual authority to authorize Sariles's violation of the federal drug laws, the district court correctly held that the public authority defense was unavailable.[3]

## III. CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.

---

[3] As noted above, the district court's holding in this case was two-fold: first, it held that the officer must have had actual authority in order for the defendant to invoke the public authority defense; and second, it concluded that in light of this legal determination and Deputy Roberts's lack of such authority, evidence of Sariles's belief about the agreement was inadmissible as irrelevant under Federal Rule of Evidence 402. The parties have not addressed the second part of the district court's holding, and we therefore do not consider whether the evidence might otherwise have been admissible as bearing on Sariles's intent.